UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| D. O. B. a minor by his mother BRITTNEY M. BETHEA,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration,<br><br>　　　　　　　　　　Defendant. | No. 1:13-cv-01414-TWP-MJD |

**REPORT AND RECOMMENDATION**

Claimant D.O.B., a minor, by his mother Brittney M. Bethea, requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. § 1382. For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

**I. Background**

D.O.B. filed an application for SSI on October 9, 2010 at the age of six, alleging onset of disability as of January 1, 2006[1] due mainly to his asthma and his Attention Deficit Hyperactivity Disorder[2] (ADHD). D.O.B.'s application was denied initially on February 6, 2011

---

[1] Although D.O.B. alleges a disability onset date of January 1, 2006 for his present SSI application, he similarly applied for SSI on February 9, 2007, which denial was affirmed by the Administrative Law Judge (ALJ) on April 29, 2010 and by this Court on August 23, 2011. [Cause No. 1:10-cv-01142-WTL-TAB, Dkts. 12, 27.] Accordingly, the issue of D.O.B.'s disability prior to and including April 29, 2010, the date of the first ALJ's denial, is *res judicata*, and only the disability period beginning April 30, 2011 is at issue. [*See* Dkt. 25.]

[2] D.O.B. recited the relevant factual and medical background in his opening brief. [*See* Dkt. 19.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 20.] Because these facts

1

and denied on reconsideration on May 18, 2011. By and through his mother, D.O.B. timely requested a hearing, which was held before Administrative Law Judge Daniel J. Mages ("ALJ") on May 17, 2012, and on May 24, 2012 the ALJ found that D.O.B. is not disabled. On July 19, 2013, the Appeals Council denied D.O.B.'s request for review, making the ALJ's decision the final decision for the purposes of judicial review. D.O.B., by and through his mother, filed his Complaint with this Court on September 6, 2013.

## II. Applicable Standard

For an individual under the age of eighteen to be eligible for SSI, a claimant must have a "disability" as defined by 20 C.F.R. § 416.924. The Act defines disability of a child as a "physical or mental impairment, which results in marked and severe functional limitations, and . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). In determining whether a minor claimant is disabled, the Commissioner employs a three-step sequential analysis: (1) if the claimant is engaged in work that qualifies as substantial gainful activity, he is not disabled regardless of his medical condition, age, education, or work experience; (2) if the claimant does not have a medically determinable, severe impairment or combination of impairments, he is not disabled; and (3) if the claimant does not have an impairment that meets, medially equals, or functionally equals a Listing or does not meet the twelve-month durational requirement, he is not disabled. 20 C.F.R. § 416.924(a), (b). *See also Murphy v. Astrue*, 496 F.3d 630 (7th Cir.2007); *Giles ex rel. Giles v. Astrue*, 483 F.3d 483 (7th Cir. 2007).

---

involve D.O.B.'s confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs, but will articulate specific facts as needed below.

In considering whether a child's impairment functionally equals a Listing, the ALJ determines whether the claimant has an extreme limitation in one of the following domains or a marked limitation in two of the following domains: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others, (4) Moving about and manipulating objects, (5) Caring for yourself, and (6) Health and physical well-being. 20 C.F.R. 416.926a(b), (d). In determining whether such limitations exist, the ALJ must consider the functional limitations of all medically determinable impairments, regardless of the severity of the impairment being taken into account. 20 C.F.R. 416.926a(a).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The standard of substantial evidence is measured by whether "a reasonable mind might accept [the evidence] as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). This court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), but the ALJ must consider "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; he must "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176

### III. The ALJ's Decision

The ALJ followed the three-step child disability determination analysis and initially found that (1) D.O.B. has not engaged in substantial gainful activity and (2) D.O.B.'s "asthma; [] disruptive behavior disorder; and attention deficit hyperactivity disorder (ADHD)" are "severe impairments," as the medical and nonmedical evidence shows that the impairments have more than a minimal effect on the claimant's functioning. [R. at 11.] At Step Three, to determine whether D.O.B.'s impairments meet or medically equal a listed impairment, the ALJ first considered the evidence under Listings 103.02A and 103.03 for his asthma and concluded that the medical record does not contain evidence of asthma attacks, low-grade wheezing, or a pulmonary function test to meet either Listing. [R. at 11.] The ALJ then considered the evidence under Listing 112.08 for his disruptive behavior disorder and Listing 112.11 for his ADHD and concluded that, because the medical evidence does not support a finding of marked impairment under Listing 112.02, D.O.B.'s impairments cannot meet Listings 112.08 or 112.11. [R. at 11-14.]

The ALJ then considered "all of the relevant evidence" to determine whether D.O.B.'s impairments functionally equal one of the Listings. First, the ALJ found that D.O.B.'s medically determinable impairments could be expected to produce the symptoms alleged. [R. at 15.] However, the ALJ then found that "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that he does not have an impairment or combination of impairments that functionally equals the listings for the reasons explained below." [*Id.*] The ALJ then explains his credibility determination throughout five pages of careful analysis of the record, including an examination of each of the

4

factors of Social Security Ruling 96-7p that the ALJ "must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements." [R. at 19-20.]

Having made a credibility determination, the ALJ then addressed each of the six domains used to measure a minor's functionality. First, the ALJ concluded that D.O.B. has a less than marked limitation in acquiring and using information, as his teachers and mother reported difficulties in kindergarten but his test scores were all in the average range and his grade reports for later years reflect mostly As and Bs with few Cs. [R. at 21-22.] The ALJ then found that D.O.B. has a less than marked limitation in attending and completing tasks, as D.O.B.'s behavior can be problematic, but consistent therapy and medication showed improvement. [R. at 22-23.] Third, the ALJ did find that D.O.B. has a marked limitation in interacting and relating with others, as he has had behavior problems in school and at home over the years when he does not get his way, but he is sometimes able to control his aggression and behave appropriately. [R. at 23-25.] With regard to moving about and manipulating objects, the ALJ concluded that D.O.B. has a less than marked limitation, as D.O.B. enjoys playing video games, football, basketball, and reading, can dress and bathe himself, and helps with the household chores. [R. at 25.] The ALJ likewise found a less than marked limitation in ability to care for himself, as his teachers, mother, and medical care professionals report little to no limitation and age-appropriate activities and competencies like bathing himself and cleaning his room. [R. at 26.] Finally, the ALJ concluded that D.O.B. has a less than marked limitation in health and physical well-being due to decreased asthma attacks with occasional physical injuries unrelated to a medical impairment. [R. at 27.] Having made these findings, the ALJ concluded that D.O.B. does not have an impairment or combination of impairments that functionally equals a Listing, as he does not have two markedly limited functional domains or one extremely limited functional domain. [R. at

27.] Accordingly, the ALJ concluded that D.O.B. is not disabled, as defined by the Act. [R. at 28.]

### IV. Discussion

D.O.B. raises four arguments as to why this Court should reverse the decision of the ALJ: (1) the ALJ's "refusal to accept the GAFs of 33, 41 and 44" resulted in an improper medical equivalency determination, (2) the ALJ erred in finding that D.O.B. has less than marked limitation in Attending and Completing Tasks and Caring for Yourself, which resulted in an improper functional equivalency determination, (3) the ALJ's failure to summon a medical advisor (psychologist) at the hearing requires reversal, and (4) the ALJ violated Social Security Ruling 96-7p by failing to fully consider the "location, duration, frequency, and intensity" of D.O.B.'s symptoms in making his credibility determination. [Dkt. 19 at 9-18.]

#### a. Medical Equivalence

It is the duty of the ALJ to consider the entirety of the record when making his disability determination; "the ALJ may not simply ignore evidence." *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). When examining a medical report, the ALJ must examine "the entirety of the mental health assessment" and cannot limit his discussion of a report merely to the portions "that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). With regard to GAF, scores, however, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir.2003)) (holding that the doctor's narrative, finding no significant medical impairments, substantially supported the ALJ's determination of lack of disability, in spite of the low GAF score given).

Here, D.O.B. argues that the ALJ "ignored or arbitrarily rejected" D.O.B.'s GAF scores of 33, 41, and 44. [Dkt. 19 at 9-10.] First, the Court must clarify that the GAF score of 33 was dated November 9, 2009, which is prior to the April 30, 2010 relevant period in this case, and thus D.O.B. cannot rely on such score. As for the other scores, the ALJ specifically *did* address the lower of the two, writing "[t]he discharge summary notes a diagnosis of ADHD and a Global Assessment of Functioning (GAF) score[1] of 41." [R. at 16.] Further, the footnote contained therein addressed the GAF score in detail by noting the following:

> Official notice is taken that global assessment of functioning, the Axis V diagnosis of the *Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, Text Revision* (DSM-IV-TR) (2000), is a clinician's subjective opinion of the psychological, social, and occupational functioning of adults. GAF is divided into 10 ranges of functioning on a descending scale from 100 to 0. GAF scores are a "snapshot" in time (*Anderson v. Astrue*, 2010 WL 3522574, 8 (N.D. Ind., 2010). They "are 'useful for planning treatment,' and are measures of both severity of symptoms and functional level" (*Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing DSM-IV-TR 32). However, the GAF score "does not reflect the clinician's opinion of functional capacity" (*Id.* at 425). "Accordingly, 'nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score'" (*Id.* at 425 (citing *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

[*Id.* at n.1.] The ALJ then went on to discuss two other mental status examinations from December of 2010 and January of 2011 that resulted in GAF scores of 60 and 65, respectively. [R. at 17.] Therefore, D.O.B.'s claim that his GAF scores were "ignored or arbitrarily rejected" is baseless in every respect, as the ALJ carefully considered and discussed the lowest of D.O.B.'s relevant GAF scores as well as two other scores and relied on "the entirety of the mental health assessment," pursuant to *Campbell*. Accordingly, no error of law occurred with regard to the ALJ's treatment of D.O.B.'s GAF scores.

### b. Functional Equivalence

D.O.B.'s second argument is that the ALJ (1) erroneously rejected an evaluation that concluded that D.O.B. has a marked impairment in the domain of Attending and Completing Tasks and (2) erroneously ignored an evaluation that concluded that D.O.B. has a marked impairment in the domain of Caring for Yourself. [Dkt. 19 at 11-12.] Again, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but may only determine whether or not substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Additionally, the ALJ "need not evaluate in writing every piece of testimony and evidence submitted," *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993), so long as he has considered "all the relevant evidence," *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

Here, the ALJ discussed the first evaluation that D.O.B. raises in this argument by writing that "little weight is given to the opinion of Stacy Lickley, LCSW, the claimant's counselor at Cummins Behavioral Health" because her opinion "is not well supported." [R. at 20.] The ALJ went on to discuss the domain Attending and Completing Tasks at length when addressing D.O.B.'s functional equivalence to a Listing, citing to at least seven separate sources of evidence to support his conclusion. [R. at 22-23.] Additionally, the ALJ's determination that D.O.B. has a less than marked limitation in Attending and Completing Tasks aligns with the conclusions of the State Agency medical consultants. [R. at 627, 638.] As clarified by the Seventh Circuit in *Carlson*, the ALJ need not discuss every piece of evidence, and it is therefore not error to fail to discuss certain pieces of evidence "so long [as] he builds a logical bridge from the evidence to

his conclusion." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The undersigned finds that the ALJ indeed built such a logical bridge, and the ALJ's finding that D.O.B. has a less than marked limitation in Attending and Completing Tasks is supported by substantial evidence.

As for the second evaluation addressed by D.O.B. that opines that D.O.B. has a marked limitation in Caring for Yourself, the evaluation itself notes that D.O.B. has a hard time expressing himself and acts out when he does not take his medication, but D.O.B's behavior is "well-rounded" when he takes his medication as prescribed. [R. at 313.] Since it is the duty of the ALJ to examine "the entirety of the mental health assessment," it is therefore proper for the ALJ to acknowledge the reasons given by the evaluator in explaining his or her opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Although the ALJ did not specifically address this assessment when discussing D.O.B.'s ability to care for himself, he did discuss the assessment by acknowledging that "[t]he claimant's first grade teacher noted that, when taking his medication, he is well rounded." [R. at 313.] In discussing D.O.B.'s ability to care for himself, the ALJ cited to several sources of evidence from the record in concluding that D.O.B. has a less than marked limitation in that domain, even though the State Agency medical consultants found *no* limitation. [R. at 26.] The Court finds no indication that the ALJ improperly ignored evidence, instead citing to the written comments of the opining teacher and other evaluations and reports in the record. Therefore, there is substantial evidence to support the ALJ's conclusion that D.O.B. has a less than marked limitation in the domain of Caring for Yourself.

### c. Failure to Summon a Medical Expert

In determining whether the claimant's impairments medically equal a Listing, "[a]n ALJ may not substitute his own judgment for a physician's opinion without relying on other medical

9

evidence or authority in the record." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). Although the ALJ has a duty "to develop the claimant's complete medical history," the ALJ does *not* have a duty "to update objective medical evidence to the time of the hearing." *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (quotations omitted). Where the medical evidence presented does not indicate the need for an updated medical examination, the ALJ is under no duty to order a consultative examination. *See Howell v. Sullivan*, 950 F.2d 343, 349 (7th Cir. 1991). It is instead "the claimant who bears the responsibility of providing medical evidence of an impairment." *Id.* at 348 (citing 20 C.F.R. § 404.1504, 404.1508).

D.O.B. asserts that, because the State Agency medical consultants did not review several evaluations that took place after the State Agency consultations, the ALJ's failure to summon a psychologist to testify at the hearing requires reversal of the ALJ's decision, as "[p]resumably, if [the State Agency medical consultants] had reviewed all of the evidence they would have reasonably determined the claimant was totally disabled." [Dkt. 19 at 15.] Aside from listing a few evaluations that were completed after the State Agency consultations took place and then baldly asserting that a testifying consultant would have "presumably" determined that D.O.B. was disabled, D.O.B. makes no effort to develop this argument to explain *how* the additional information is significant or *how* the ALJ relied on his own "layperson's opinion." [*Id.*] In the Seventh Circuit, a "skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). This argument has, therefore, been waived by D.O.B.'s counsel's failure to develop such argument.

However, even if D.O.B.'s argument was properly developed, it is well established that, when presented with additional medical evidence not reviewed by a State Agency medical consultant, it is within the ALJ's discretion to determine whether the additional evidence may

10

change the medical consultant's original finding that the claimant's impairments do not medically equal a Listing. S.S.R. 96-6p. Therefore, the ALJ did no err in failing to summon a medical expert to testify at the hearing as to whether D.O.B.'s combined psychological impairments medically equal a Listing.

### d. Credibility Determination

After an ALJ determines that a minor claimant's combined impairments neither meet nor medically equal a Listing, the ALJ must determine whether the claimant's impairments *functionally* equal a Listing by evaluating the developmental domains: (1) Acquiring and using information, (2) Attending and completing tasks, (3) Interacting and relating with others, (4) Moving about and manipulating objects, (5) Caring for yourself, and (6) Health and physical well-being. 20 C.F.R. 416.926a(b), (d). In evaluating the child's functioning, the ALJ takes into account the "whole child," measured by the child's activities as performed "at home, at school, and in the community." S.S.R. 09-1p. With no requirement to consult with medical experts at this stage, it is the ALJ who determines functional equivalence, based on the evidence presented. *Id.* Additionally, so long as the ALJ gives "specific reasons" for his credibility findings, the ALJ's measure of the credibility of the witnesses is given great deference; only a "patently wrong" determination will be overturned *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

D.O.B.'s final argument insists that the ALJ's negative credibility determination "must be reversed because it is contrary [to] the evidence and contrary to Social Security Ruling 96-7p," as it is "arbitrary," "irrational," and "backwards," first stating the credibility determination and then explaining it. [Dkt. 19 at 18-19.] Specifically, D.O.B. objects to the negative credibility finding (1) against Stacy Lickley, D.O.B.'s counselor at Cummins Behavioral Health, because her opinion that D.O.B. has a marked impairment in both Interacting and Relating to Others and

Attending and Completing Tasks "fully corroborated the claimant's allegations of total disability" and (2) against D.O.B.'s mother's testimony, alleging that the ALJ failed to evaluate the "location, duration, frequency, and intensity of the individual's pain and symptoms" pursuant to Ruling 96-7p. [*Id.* at 18.]

First, the ALJ did, in fact, evaluate the "location, duration, frequency, and intensity" of D.O.B.'s symptoms, as required by Ruling 96-7p, concluding that such descriptions by D.O.B.'s mother are "unpersuasive as they are generally unfounded elsewhere in the record," because "the record shows improvement at home and school, despite the claimant's mother's testimony to the contrary." [R. at 19.] Additionally, the ALJ specifically notes that D.O.B. himself had no problems at the hearing even though he had not taken his medication in three days. [*Id.*] To support this credibility determination, the ALJ cited to further evidence throughout the record in addition to his own observations. [*Id.*] Thus, the ALJ's negative credibility finding with regard to D.O.B.'s mother's description of the location, duration, frequency, and intensity of D.O.B.'s symptoms comports with the standard set forth in *Craft* was not patently erroneous.

As for the ALJ's decision to give little weight to Ms. Lickley's opinion that D.O.B. has a marked impairment in Attending and Completing Tasks, such decision was not "irrational" or "boilerplate," as asserted by D.O.B. [*See* Dkt. 19 at 18-19.] To explain this credibility determination, the ALJ specifically bolsters his determination with the following explanation: "[a]s discussed below, the claimant has less than marked limitation in attending and completing tasks, and his grades show that he is doing well academically." [R. at 20.] In the relevant section of the ALJ's decision referenced in such determination, the ALJ reviews the evaluations from D.O.B.'s kindergarten teachers as well as his mental status examinations and the results of the State Agency consultations in concluding that D.O.B. has a less than marked limitation in

Attending and Completing Tasks. [R. at 23.] Accordingly, the ALJ's credibility determination with regard to Ms. Lickley is well-reasoned and thorough, as required by *Craft*, and should likewise not be reversed as patently erroneous.

## V. Conclusion

For the aforementioned reasons, the Court should find that substantial evidence supports the ALJ's determination that D.O.B. is not disabled. The Commissioner's decision should therefore be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 01/05/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov